The STATE of Ohio, Appellee,

v.

BRADLEY, Appellant.

[Cite as *State v. Bradley* (1995), 101 Ohio App.3d 752.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 67123.

Decided March 20, 1995.

*Stephanie Tubbs Jones*, Cuyahoga County Prosecuting Attorney, and *William D. Ailer*, Assistant Prosecuting Attorney, for appellee.

*Harvey Bruner & Associates, Harvey B. Bruner* and *Bret Jordan*, for appellant.

---

PORTER, Presiding Judge.

Defendant-appellant Terence Bradley appeals from his convictions following a jury trial for carrying a concealed weapon (R.C. 2923.12) and having a weapon under disability (R.C. 2923.13). Defendant claims on appeal that the trial court should have suppressed evidence of the weapon obtained by a warrantless search, that the evidence was not sufficient to sustain the verdict, that it was against the manifest weight of the evidence and that the trial court erred in denying defendant a new trial. We find no error and affirm for the reasons stated below.

On March 19, 1993, defendant was visiting his girlfriend, Theresa Taylor, at her apartment in Euclid, Ohio. She had been stabbed about a week before and was recovering from her wounds. Defendant went to her home to offer comfort and stay overnight to protect her. While there, he got a telephone call from another woman and planned to leave to meet the other woman later that evening. Theresa resented this and a fight ensued in which she struck the defendant. The fight moved downstairs, where Taylor had other visitors. Bradley left the apartment and Taylor called 911. She advised the 911 operator that defendant had left her apartment and had a .22 caliber handgun in the blue bag he was carrying and was going to catch an RTA bus on Euclid Avenue.

Euclid police had been notified of the disturbance and an officer, Robert Nolan, was dispatched to investigate. While en route, he got another broadcast that Terence Bradley had left the apartment to catch the RTA bus and was carrying a blue bag with a white-handled .22 caliber gun. The police found no one at the RTA bus stop near the apartment, but overtook the bus heading towards town.

After stopping the bus, Officer Nolan boarded the bus and found defendant sitting on the seat behind the driver. Across the way on the opposite seat was the blue bag. Defendant admitted he was Terence Bradley and, at the officer's request, stepped off the bus and was patted down. Officer Nolan asked a female passenger who the blue bag belonged to and she indicated defendant, who was standing outside with other officers. Officer Nolan opened the bag, found the .22 caliber revolver and placed the defendant under arrest.

Prior to the jury trial, the court held a hearing on defendant's motion to suppress because of the seizure of the gun without a warrant. The trial judge found that defendant had abandoned the blue bag and that the officer was within his rights in examining its contents without a warrant.

From defendant's timely appeal, we will address his assignments of error in the order asserted.

"I. The trial court erred to the prejudice of defendant-appellant by denying defendant-appellant's motion to suppress."

The applicable law on this subject has been recently stated in *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172, 1174:

"In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Clay* (1973), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908."

The critical issue is whether the officers had probable cause, under all the circumstances, to believe that defendant was carrying a concealed weapon. In other words, were they justified in relying on the informant's tip to apprehend the defendant and conduct a warrantless search of his blue bag on the advice that it contained a .22 caliber revolver?

Although defendant was apprehended on a public bus, we believe an analogy to automobiles is appropriate.

A warrantless search of an automobile is not unreasonable within the meaning of the Fourth Amendment so long as the officer has probable cause to believe the vehicle contains contraband. *United States v. Ross* (1982), 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572; *Carroll v. United States* (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; *State v. Welch* (1985), 18 Ohio St.3d 88, 91, 18 OBR 124, 126–127, 480 N.E.2d 384, 386–387.

To determine whether the officer had the requisite probable cause justifying the warrantless search, the United States Supreme Court has adopted the "totality of circumstances" approach. In *Illinois v. Gates* (1983), 462 U.S. 213, 230–231, 103 S.Ct. 2317, 2328–2329, 76 L.Ed.2d 527, 543–544, the court stated:

"This totality-of-the-circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific 'tests' be satisfied by every informant's tip. Perhaps the central teaching of our decisions bearing on the probable-cause standard is that it is a 'practical, nontechnical conception.'

" * * *

" 'The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulat-

ed certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.'"

■ Thus, "probable cause" is a common-sense, practical threshold which gives due consideration to the perceptions and actions of law enforcement officers. It means less than evidence necessary to support a conviction. "It imports a seizure made under circumstances which warrant suspicion." *Gates*, 462 U.S. at 235, 103 S.Ct. at 2330, 76 L.Ed.2d at 546.

We find that by applying the totality of the circumstance to the instant case, the officers had probable cause to stop the bus, apprehend the defendant and make a warrantless search of his blue bag.

The officers received their information from Theresa Taylor, the defendant's girlfriend. She told the dispatcher that defendant's name was Terence Bradley, that he had left the apartment after the fight, that he had a .22 caliber white-handled revolver in a blue carry-on bag, and that he was going to catch the RTA bus down Euclid Avenue. This was not an anonymous tip, but one which "panned out" in every respect. Everything the informant predicted came to pass. The accuracy of these predictions and descriptions coupled with the officers' observations and alert bus chase established the necessary probable cause and justify a stop and search within the principles of *Gates*.

See, also, *State v. Welch, supra,* 18 Ohio St.3d at 93, 18 OBR at 128–129, 480 N.E.2d at 388, where similar tips from informants led to drug busts based on information accurately describing the defendant, his arrival at the Marriott Inn, and his possession of drugs in a car with Michigan license plates. "The totality of these facts and circumstances, coupled with the personal corroborating observations of the officers, clearly established probable cause for the warrantless search of the entire automobile in question." *Id.* Applying the test in *Alabama v. White* (1990), 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301, we reach the same conclusion. In reaching a determination of reliability on the informant's disclosures, the court observed at 332, 110 S.Ct. at 2417, 110 L.Ed.2d at 310:

"What was important was the caller's ability to predict respondent's *future behavior,* because it demonstrated inside information—a special familiarity with the respondent's affairs. The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have

access to reliable information about that individual's illegal activities." (Emphasis *sic.*)

It may just as well be said about the circumstances here. The officers came to justifiably believe in their informant's tips when her predictions came true. We daresay that informants' tips account for a substantial amount of police leads to criminal activity. If police may no longer rely on such information to apprehend and arrest, even when it proves to be one hundred percent accurate, then we are severely handicapping the police in the performance of their duties.

Although the trial judge found that defendant had abandoned the blue bag and, therefore, the officers were entitled to examine its contents without a warrant, we do not think that finding was necessary to overrule the motion to suppress. Here, the officers were merely following reliable leads that proved out. Under the circumstances, they were entitled to go into the bag which they had been informed contained the concealed weapon. We find no fault with their pursuit of the evidence.

The first assignment of error is overruled.

"II. The evidence presented by the state of Ohio in its case in chief was insufficient as a matter of law and pursuant to Rule 29 of the Ohio Criminal Rules of Procedure the trial court erred by not dismissing.

"III. The verdict is against the manifest weight of the evidence.

"IV. The trial court erred when it denied appellant's motion for a new trial."

We will address these assignments of error together as they share a common legal foundation.

In *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus, the Ohio Supreme Court set forth the test to be applied by the trial court in such circumstances:

"Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

The essence of this test prevails to the present day.

The Supreme Court of Ohio recently described the appellate court's role when reviewing the sufficiency of the evidence in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"

Moreover, the weight to be given the evidence and the credibility of witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

■ The evidence herein was clearly sufficient to overrule defendant's Crim.R. 29(C) motion for acquittal. The defendant was caught red-handed with a concealed weapon in his blue overnight bag. His girlfriend told the police at first he put the gun in there, later saying her friends had told her he put the gun in there. Even though she had second thoughts about her testimony and her relationship with the defendant, the father of one of her children, it was for the jury to decide the credibility of her testimony. The evidence was sufficient to establish the essential elements of the crime charged.

■ Defendant also contends that the trial court erred in denying his Crim.R. 33 motion for a new trial based on newly discovered evidence. A Crim.R. 33 motion for new trial is addressed to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Schiebel, supra,* 55 Ohio St.3d 71, 564 N.E.2d 54; *State v. Pinkerman* (1993), 88 Ohio App.3d 158, 623 N.E.2d 643. The newly discovered evidence entails letters written by Taylor to defendant in jail. Although this tends to corroborate Taylor's recantation at trial, it does not change the defense's trial posture that Taylor told about the gun out of jealousy and revenge.

■ If the jury did not believe Taylor's recantation on the witness stand, it is unlikely that her letters written after her boyfriend is sentenced would be entitled to any greater credibility. *State v. Pirman* (1994), 94 Ohio App.3d 203, 209, 640 N.E.2d 575, 578–579; *State v. Brooks* (Mar. 10, 1994), Cuyahoga App. No. 65088, unreported, 1994 WL 77738. Recantation of prior testimony by an important witness for the state is not, by itself, grounds for a new trial. *State v. Kicak* (App.1959), 83 Ohio Law Abs. 289, 291, 168 N.E.2d 768, 770; *State v. Seiber* (Sept. 2, 1993), Cuyahoga App. No. 63717, unreported, 1993 WL 335432. A witness prone to changing his testimony is looked upon with the utmost

suspicion and must be viewed with strict scrutiny. *State v. Curnutt* (1948), 84 Ohio App. 101, 109–111, 39 O.O. 120, 84 N.E.2d 230, 234–235; *Seiber, supra.*

Defendant's preceding argument concerning the denial of his motion for a new trial is also intertwined with defendant's claim that the verdict was against the manifest weight of the evidence, an issue raised and interspersed throughout defendant's brief.

When addressing whether a verdict is against the manifest weight of the evidence, the reviewing court examines "the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weights heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721; see, also, *State v. Jenks, supra,* 61 Ohio St.3d 259, 574 N.E.2d 492; *State v. Rios* (1991), 75 Ohio App.3d 288, 291, 599 N.E.2d 374, 376.

A review of the record reveals that the jury, as the trier of fact in the instant case, could properly find defendant guilty of carrying a concealed weapon beyond a reasonable doubt. The girlfriend's testimony and the police testimony were sufficient to prove the case. It is the province of the jury, as the trier of fact, to determine the credibility of the witnesses. *State v. DeHass, supra,* 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

These three assignments of error are overruled.

*Judgment affirmed.*

DYKE and NAHRA, JJ., concur.