The STATE of Ohio, Appellee,

v.

SANDERS, Appellant.

[Cite as *State v. Sanders* (1998), 130 Ohio App.3d 789.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 97–A–0049.

Decided Dec. 18, 1998.

*Thomas L. Sartini,* Ashtabula County Prosecuting Attorney, and *Linda G. Silakoski,* Assistant Prosecuting Attorney, for appellee.

*Mark Gardner,* for appellant.

WILLIAM M. O'NEILL, Judge.

Appellant, Cynthia A. Sanders, appeals from her conviction and sentence in the Ashtabula County Court, Eastern Area, on one count of driving under the influence of alcohol in violation of R.C. 4511.19(A)(1) and one count of failure to signal in violation of R.C. 4511.39.

The following facts are relevant to a determination of this appeal. On June 30, 1996, at approximately 12:47 a.m., Ohio State Highway Patrol Trooper Paul March was on routine traffic-enforcement patrol just outside the village of Jefferson, Ohio. Using laser equipment, he clocked a vehicle traveling in the opposite direction on State Route 167 at forty-four mph in a thirty-five mph zone. The vehicle was being driven by appellant. Trooper March turned his cruiser around and began following appellant. He noticed that appellant was drifting within her own lane and, when she stopped at the intersection with Market Street, her passenger-side tires were actually on top of the white line at the edge of the road. Appellant then made a right turn onto Market Street without using her turn signal. At that point, Trooper March believed that he had witnessed three traffic violations, so he stopped appellant.

Upon approaching appellant's vehicle, Trooper March activated an audio tape recorder he had concealed in his pocket. He noticed that the interior of the vehicle was filled with smoke and that appellant was smoking a cigarette. He also noticed that appellant was chewing gum and that her eyes were bloodshot. Trooper March did not detect the odor of alcohol about appellant at that time. He did observe, however, what he described as an unusually slow and deliberate speech pattern on the part of appellant, as though she had to consciously think about the questions asked and how she would respond.

Appellant explained to the trooper that she had attended a graduation party earlier in the evening and that she was attempting to find her boyfriend's house in Dorset, Ohio. She had become lost, as she was not familiar with that portion of Ashtabula County. Trooper March informed appellant that she was proceeding in the opposite direction from Dorset.

Based upon his observations up to that point, Trooper March asked appellant to step out of the car, put out her cigarette, and spit out her gum. Appellant complied and, at that time, the trooper noticed an odor of alcohol about her. Upon further questioning, appellant informed Trooper March that earlier she had consumed "a couple" of drinks.

Trooper March then administered a series of field sobriety tests, beginning with the horizontal gaze nystagmus test ("HGN"). This was followed by the one-leg stand test and the walk-and-turn test. In the opinion of Trooper March, appellant was under the influence of alcohol. Appellant was placed under arrest and transported to the Ashtabula County Sheriff's Department. There, at 1:14 a.m., appellant signed her name on a 2255 form, which informs a defendant of the consequences of failing to take a breath test. Appellant then volunteered to take a breath test, which established that her breath-alcohol level was .083 grams of alcohol per two hundred ten liters of breath, which is below the legal limit in Ohio of .10.

Appellant was then issued a citation for driving under the influence of alcohol in violation of R.C. 4511.19(A)(1) and failing to signal before making a turn in violation of R.C. 4511.39. Appellant was given written warnings for her alleged marked-lane violation and excess-speed violation.

Prior to trial, appellant filed a motion to suppress all evidence seized during her detention. This motion was overruled by the trial court on June 4, 1997. Appellant also filed a motion *in limine* to prohibit the state from introducing into evidence the results of appellant's breath test as well as the results of the HGN test. On the morning of the trial, the trial court granted appellant's motion as to the results of appellant's breath test but ruled that evidence of the HGN test would be admissible.

A jury trial commenced on July 29, 1997. On July 31, 1997, the jury found appellant guilty on both charges. Appellant was sentenced accordingly on August 1, 1997. She timely filed a notice of appeal and has set forth the following assignments of error:

"1. The trial court erred when it denied Defendant's motion to suppress all information obtained by the police after the scope of the traffic stop was expanded without cause.

"2. The trial court violated Defendant's right to due process when it ruled that evidence of Defendant's handwriting from the morning of her arrest was inadmissible.

"3. The Defendant's right to due process was violated by the State's destruction of exculpatory material evidence.

"4. The trial court abused its discretion when it admitted the arresting officer's report into evidence.

"5. The trial court erred when it denied Defendant's motion to strike the arresting officer's testimony regarding the results of the horizontal gaze nystagmus test on the basis that no foundation had been laid.

"6. The trial court abused its discretion when it denied Defendant's motion to strike the arresting officer's testimony regarding the results of the horizontal gaze nystagmus test on the basis that the results were irrelevant to the issue of whether Defendant was driving while under the influence of alcohol.

"7. There is insufficient evidence to support the conviction of Defendant on the charge of failure to signal before executing a turn."

In the first assignment of error, appellant contends that the trial court erred when it denied her motion to suppress all information obtained by the police after the scope of the traffic stop was expanded without cause.

It is undisputed that Trooper March was justified in making the initial stop of appellant based upon the speeding violation alone.[1] However, the question raised by appellant is whether Trooper March had some specific and articulable facts to make further detention of appellant reasonable. See *State v. Hart* (1988), 61 Ohio App.3d 37, 41, 572 N.E.2d 141, 144; *State v. Foster* (1993), 87 Ohio App.3d 32, 40, 621 N.E.2d 843, 848.

After stopping appellant based upon three possible traffic violations, Trooper March approached appellant's vehicle. There, he noticed a cloud of smoke inside the vehicle, which was being caused by the smoking of a cigarette by appellant. He also noticed that appellant was chewing gum. Cigarette smoking and gum chewing are two means by which a person can attempt to conceal the odor of alcohol on his or her breath. Trooper March also noticed that appellant's eyes were bloodshot, which is a factor often observed in people who are under the influence of alcohol. *State v. Bycznski* (1994), 98 Ohio App.3d 625, 630, 649 N.E.2d 285, 288; *Wickliffe v. Gutauckas* (1992), 79 Ohio App.3d 224, 226, 607 N.E.2d 54, 55–56. Finally, the trooper noticed that appellant's speech was slow and deliberate, as though she had to consciously think about how she would answer the trooper's questions, and that her reaction time was unusually slow.

Based upon the totality of these circumstances, including appellant's driving problems and the observations of Trooper March after he stopped appellant, we conclude that Trooper March had some specific and articulable facts to further detain appellant and to ask her to step out of her vehicle.

■ Once that request was made, further facts came to the trooper's attention that warranted even further inquiry in the form of field sobriety tests. Specifically, it appeared to Trooper March that appellant had to use the car door for balance in getting out of the vehicle. Once appellant was out and she had extinguished her cigarette and spat out her gum, Trooper March noticed an odor of alcohol on her breath. Appellant then admitted to having consumed "a couple of drinks" earlier in the evening.

■ It is well established that a police officer does not need probable cause before conducting field sobriety tests. All that is required is reasonable suspicion of criminal activity. *Columbus v. Anderson* (1991), 74 Ohio App.3d 768, 770, 600 N.E.2d 712, 714. It is clear that reasonable suspicion existed for Trooper March to conduct a series of field sobriety tests based upon the totality of the circumstances. Accordingly, the trial court properly denied appellant's motion to

---

1. The issue of the turn signal violation is disputed by appellant and will be addressed under appellant's seventh assignment of error.

suppress all information obtained by the police. Thus, appellant's first assignment of error is without merit.

In the second assignment of error, appellant asserts that the trial court erred in ruling that a sample of her signature obtained shortly after her arrest was inadmissible. After appellant was taken to the sheriff's department, she signed her name on a refusal form, which is used to inform a defendant of the consequences of failing to take a breath test. This occurred at 1:14 a.m., approximately twenty-seven minutes after she was stopped by the Highway Patrol. At trial, defense counsel attempted to admit into evidence an enlarged copy of that form, but the trial court ruled that it was irrelevant.

Upon review of the trial transcript, it is clear that this case came down to appellant's word versus Trooper March's word. There is no objective evidence in the record to corroborate either party's version of the facts. Appellant maintained that she was not intoxicated, while Trooper March claimed that she was.

Trooper March testified that alcohol impairs a person's fine and gross motor skills. Thus, appellant sought to introduce evidence of her signature shortly after her arrest to refute the trooper's testimony that her motor skills were impaired due to the influence of alcohol. Pursuant to Evid.R. 402, relevant evidence is generally admissible. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

The trial court found the signature to be inadmissible, stating: "I don't think it's relevant at all, the clarity of her signature. I really don't. I don't see that the signature as interpreted by Officer March is relevant to this inquiry."

The court added: "I reject the notion that one's signature can be used to support the contention that one is or is not under the influence of alcohol * * *."

We disagree with the trial court's conclusion. While we cannot conclude that the clarity with which appellant was able to sign her name is dispositive of whether she was under the influence at that time, it clearly was relevant. When a signature appears neat and legible, the inference that can be made is that the signer's motor skills were not impaired. Thus, since impairment was the critical issue in this trial, it was error to prevent the jury from viewing appellant's signature written shortly after her arrest.

The trial court also expressed concern that the content of the refusal form on which appellant's signature appeared might have been confusing to the jury. Even if this were true, however, the trial court rejected appellant's offer to obscure everything on the form except for her signature, which would have

eliminated any potential confusion. Accordingly, this was also not a valid bar to the admission of the signature.

Based upon the foregoing analysis, the trial court erred when it ruled that appellant's signature from the morning of her arrest was inadmissible. Appellant's second assignment of error is sustained.

■ In the third assignment of error, appellant submits that her right to due process was violated by the state's destruction of exculpatory material evidence. Specifically, appellant argues that the deliberate destruction or suppression of evidence favorable to the defendant by the state violates the defendant's constitutional rights whether the destruction occurred in good faith or bad faith. For this proposition, appellant relies on *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. Appellant claims that Trooper March destroyed the audiotape recording of the traffic stop that resulted in appellant's arrest for driving under the influence of alcohol. The destruction of this tape prevented appellant from access to a key piece of exculpatory evidence that would have shown a calm, lucid, cooperative person throughout the stop and detention.

However, appellant's interpretation of *Brady* is unfounded. The United States Supreme Court later clarified *Brady* in *Arizona v. Youngblood* (1988), 488 U.S. 51, 57–58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289, wherein the court stated:

"The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady,* makes the good or bad faith of the State irrelevant when the State fails to *disclose* to the defendant material exculpatory evidence. But we think the Due Process Clause requires a *different* result when we deal with the failure of the State to *preserve* evidentiary material * * * the results of which might have exonerated the defendant. * * * We therefore hold that *unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.*" (Emphasis added.)

The *Youngblood* court also stated that "[t]he presence or absence of bad faith * * * must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* at 57, 109 S.Ct. at 336, 102 L.Ed.2d at 288, fn.

Thus, appellant must establish not only that the recording was exculpatory, but that Trooper March had knowledge of the exculpatory value of the tape when he destroyed it. Appellant has failed on both counts. The only evidence to support appellant's claim that the tape recording was exculpatory was appellant's own testimony. This was directly contradicted by the testimony of Trooper March. Hence, appellant has failed to show that the recording was exculpatory. Moreover, appellant has failed to establish that Trooper March had knowledge of the

exculpatory value of the tape when he destroyed it. In fact, the only evidence on this point was that Trooper March routinely taped over his audiotapes from one stop to the next, as the sole purpose for the recordings was to help Trooper March prepare any reports that needed to be prepared.

Accordingly, appellant's due process rights were not violated when Trooper March taped over the audiotape recording of her traffic stop. Appellant's third assignment of error is without merit.

■ In the fourth assignment of error, appellant contends that the trial court abused its discretion when it admitted the arresting officer's report into evidence. Defense counsel used Trooper March's written report to refresh the memory of the trooper during cross-examination. The trial court permitted the state to admit the report on the basis of Evid.R. 612, which provides:

"Except as otherwise provided in criminal proceedings by Rule 16(B)(1)(g) and 16(C)(1)(d) of Ohio Rules of Criminal Procedure, if a witness uses a writing to refresh his memory for the purpose of testifying, either: (1) while testifying; or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an *adverse* party is entitled to have the writing produced at the hearing. He is also entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness." (Emphasis added.)

It is clear, however, that Evid.R. 612 allows only an *adverse* party to introduce the writing into evidence. Here, Trooper March was the state's witness and, therefore, the state was not permitted to have the report admitted on the basis of Evid.R. 612.

■ Evid.R. 802 excludes the admission of hearsay unless otherwise provided for in the rules. Evid.R. 803 consists of a list of twenty-two exceptions to the general rule that hearsay is inadmissible. Evid.R. 803(8) includes, as one of the exceptions:

"Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, *unless offered by defendant,* unless the sources of information or other circumstances indicate lack of trustworthiness." (Emphasis added.)

As interpreted by the Supreme Court of Ohio in *State v. Ward* (1984), 15 Ohio St.3d 355, 358, 15 OBR 477, 479, 474 N.E.2d 300, 302, Evid.R. 803(8) "prohibits the introduction of reports which recite an officer's observations or criminal

activities or observations made as part of an investigation of criminal activities," unless, of course, offered by the defendant.

Based upon this analysis, it was an abuse of discretion for the trial court to admit the arresting officer's report into evidence. Appellant's fourth assignment of error is sustained.

In the fifth assignment of error, appellant asserts that the trial court erred when it denied her motion to strike Trooper March's testimony regarding the results of the HGN test on the basis that no foundation had been laid. Specifically, appellant maintains that Trooper March was not properly qualified to administer the HGN test and that, in fact, he did not follow the proper procedures when he administered the test to appellant.

The Supreme Court of Ohio has held:

"A properly qualified officer may testify at trial regarding a driver's performance on the horizontal gaze nystagmus test as it pertains to the issues of probable cause to arrest and whether the driver was operating a vehicle while under the influence of alcohol. See R.C. 4511.19(A)(1). However, such testimony may not be admitted to show what the exact alcohol concentration level of the driver was for purposes of demonstrating a violation of R.C. 4511.19(A)(2), (3), or (4)." *State v. Bresson* (1990), 51 Ohio St.3d 123, 554 N.E.2d 1330, syllabus.

A review of the testimony given by Trooper March demonstrates that it fit within the guidelines of *Bresson*. While the trooper admitted that he had not been trained in administering an HGN test in three and one-half years, and had not read the field sobriety testing policy written by the Ohio State Highway Patrol in over a year, he was able to demonstrate extensive knowledge of the testing procedures, and he offered his opinion regarding appellant's level of intoxication. Moreover, the HGN test was just one test administered by Trooper March. Two other field sobriety tests were given to appellant, and, in the opinion of Trooper March, she failed them both. Under the facts of the present case, we see no prejudicial error in the admission of the testimony of the arresting officer regarding the HGN test based on a perceived lack of foundation. The procedural defects brought out on cross-examination affect the credibility of the witness, not the admissibility of the evidence. Appellant's fifth assignment of error is without merit.

In the sixth assignment of error, appellant argues that the trial court abused its discretion when it denied her motion to strike Trooper March's testimony on the HGN test as were irrelevant in a prosecution under R.C. 4511.19(A)(1). Appellant contends that while the results of the HGN test would be relevant in a prosecution under R.C. 4511.19(A)(3) since a police officer can use an HGN test to predict the blood-alcohol level of a suspect, the results are

irrelevant in the present case because no relationship was established between the results of an HGN test and impaired driving.

This is a unique argument but one that is clearly without merit. Pursuant to the Supreme Court's decision in *Bresson*, HGN testing can be used to establish probable cause as to whether a person is driving under the influence of alcohol because there is a correlation between blood-alcohol concentration and nystagmus. *Id.*, 51 Ohio St. 3d at 124–125, 554 N.E.2d at 1331–1333. Additionally, the court stated that according to the United States Department of Transportation, "the HGN test is the single most accurate field test to use in determining whether a person is alcohol impaired." *Id.* at 125, 554 N.E.2d at 1332. Thus, the logical conclusion is that an HGN test is one of several valid tools that can be used to indicate whether a person has been driving while alcohol-impaired, in violation of R.C. 4511.19(A)(1).

Based upon the foregoing, the trial court did not abuse its discretion when it denied appellant's motion to strike Trooper March's testimony regarding the results of the HGN test. Appellant's sixth assignment of error is without merit.

In the seventh assignment of error, appellant contends that there was insufficient evidence to support her conviction on the charge of failing to signal before executing a turn. "A challenge to the sufficiency of the evidence is quantitatively and qualitatively different from a challenge to the weight of the evidence." *State v. Longmire* (Dec. 19, 1997), Portage App. No. 97–P–0024, unreported, at 3, 1997 WL 799909. This difference was addressed by the Supreme Court of Ohio in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. There, the court explained the concept of sufficiency of the evidence as follows:

"In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148." *Id.* at 386, 678 N.E.2d at 546.

In the instant cause, appellant was found guilty of violating R.C. 4511.39, which provides:

"No person shall turn a vehicle or trackless trolley or move right or left upon a highway unless and until such person has exercised due care to ascertain that the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided.

"When required, a signal of intention to turn or move right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle or trackless trolley before turning."

Appellant asserts that the statute in question requires the use of a turn signal before turning only when another car will be affected by the maneuver. While appellant admits she did not use her turn signal, she concludes that since no other car was affected by her maneuver, she did not violate R.C. 4511.39. This argument was previously made and rejected in *State v. Lowman* (1992), 82 Ohio App.3d 831, 613 N.E.2d 692. The Twelfth District Court of Appeals reasoned as follows:

"The first paragraph of R.C. 4511.39 sets forth two distinct duties. It embodies a requirement of reasonable care in changing directions in traffic *and* a requirement to use a signal. The statute says that a driver may not change direction until he has ascertained 'that the movement can be made with reasonable safety *nor* without giving an appropriate signal * * *.' (Emphasis added.) The signal requirement is set forth in absolute terms and is not modified by the language mandating reasonableness in changing directions.

"Further, because it is followed by the phrase 'in the manner hereinafter provided' the term 'appropriate signal' must be seen as describing the mechanics of giving the signal itself, and not as referring to the situation in which the signal is required. The fact that the legislature required the use of an 'appropriate signal' cannot be construed as making the use of such signal contingent upon traffic conditions. Similarly, the phrase 'when required' simply refers to a situation in which the driver intends to change direction on the roadway. The phrase refers to the signal requirement as set forth in the first paragraph of the statute, and again there is no indication that this language was intended to make the requirement conditional. The legislature could have chosen a term such as 'when reasonable,' but it did not do so. We decline to read such language into the section." *Id.* at 835, 613 N.E.2d at 694–695.

We agree with the foregoing opinion. Accordingly, appellant's conviction for violating R.C. 4511.39 was supported by sufficient evidence. Appellant's seventh assignment of error is without merit.

Based on the foregoing analysis, appellant's conviction on the charge of driving under the influence of alcohol is reversed and the matter remanded for a new trial on that charge. However, appellant's conviction on the charge of failing to signal before making a turn is affirmed.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

NADER, J., concurs.

CHRISTLEY, P.J., dissents.

CHRISTLEY, Presiding Judge, dissenting.

I respectfully dissent from the majority's analysis and conclusion on the second and fourth assignments of error.

As to the second assignment of error, the issue of the admission of appellant's signature on her driver's license, I would agree that the trial court's blanket rejection of the offer of the signature is incorrect. Certainly, when a proper foundation had been laid, a signature analysis could indeed have been relevant to show the degree of physical impairment of the signature's author. However, the record does not show that any such foundation was laid. There was no proffer of the opinion of an expert; there was no comparative signature offered; in other words, there was no evidence put forth or proffered that would support the claims of appellant as to relevancy.

I disagree strongly with the majority's belief that the jury would be qualified to conclude that, because a single signature appeared to be neat and legible, *ergo*, the writer was sober. It would require an inference on an inference, *i.e.*, the signature was the writer's normal signature, and a neat and legible signature could be produced only if the writer was sober. Without a foundation or a proffer of such a foundation, I believe the trial court was correct in disallowing the signature from evidence. The end result was therefore the right conclusion, albeit for the wrong reason. I would therefore affirm as to the second assignment.

As to the fourth assignment, I concur with the majority's conclusion that the admission of the report was error. However, I would find it to be harmless error because all of the relevant material in the report was, in fact, testified to by Trooper March. Thus, there were no prejudicial revelations beyond those to which he had already testified.

The pertinent provisions of the Ohio Rules of Evidence follow. Evid.R. 612 reads:

"Writing Used to Refresh Memory. Except as otherwise provided in criminal proceedings by Rule 16(B)(1)(g) and 16(C)(1)(d) of Ohio Rules of Criminal Procedure, if a witness uses a writing to refresh his memory for the purpose of testifying, either: (1) while testifying; or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing. He is also entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that

the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto."

Evid.R. 803(8) reads:

"Hearsay Exceptions; Availability of the Declarant Immaterial. The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

" * * *

"(8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness."

·During the state's direct examination of Trooper March, the state first used the report to refresh his memory. The report was entitled "Ohio State Highway Patrol Impaired Driver Report" and was marked "State's Exhibit C." Pursuant to Evid.R. 612, appellant's counsel was then given the opportunity to inspect the report and use it in the defense's cross-examination of Trooper March. Neither party has disputed the propriety of these actions.

During cross-examination, the defense attempted to attack the accuracy of Trooper March's observations of appellant, thereby calling into question the trooper's credibility. During this process, the defense made several references to Trooper March's report. When defense counsel was referring to the contents of the report, Trooper March again admitted that he could not presently recollect all of his prior observations without the assistance of the report. Defense counsel thereafter showed Trooper March portions of the report and repeated the questions. The state did not object when defense counsel used the report in this fashion.

At the close of the state's case, the state offered State's Exhibit C, the report, into evidence. Defense counsel objected on the grounds that Evid.R. 803(8) permitted the introduction of the report only when *the defense* was the party offering it into evidence. The trial court rejected this argument and overruled defense counsel's objections on two grounds. First, the trial court stated that because defense counsel also used the report to refresh Trooper March's memory, the opportunity to introduce the report shifted back to the state. Under this interpretation of the rule, the state then became the adverse party referred to in Evid.R. 612. Second, the trial court characterized the report as a test outcome or

a test score rather than an investigative report, thereby holding that it was admissible pursuant to Evid.R. 803(8).

At the outset, I believe that the trial court misapplied Evid.R. 612 in this case. Here, the adverse party referred to in the rule is the defense. The state was the original party whose witness needed to have his memory refreshed on direct examination with the report. In accordance with Evid.R. 612, the adverse party was then the defense. As indicated above, the defense was then entitled to inspect the report and to use the report in cross-examination.[2] The defense did so. If the defense had thereafter desired to move the court to introduce the report into evidence, it could have done so. However, the defense did not.

Nevertheless, the trial court determined that the provision of Evid.R. 612 regarding the opportunity to introduce evidence somehow shifted when the defense allowed Trooper March to review the report to refresh his memory during cross-examination.

Irrespective of the fact that I find no authority for that interpretation, I do not perceive that the defense's use of the report resulted in a shift of who was considered the adverse party. Instead, the defense simply used the report to cross-examine the witness as it was permitted to do under Evid.R. 612.[3] Indeed, the defense's primary objective was to call into question the witness's credibility; the fact that Trooper March could not then recall his prior observations in the report did not change that objective.

The purpose of the rule would not be well served if the state could prevent the original adverse party from thoroughly cross-examining a witness out of concern that the inquiry might result in the state's being able to admit the report.

Thus, as the report was first used to refresh the state's witness on the state's direct examination of that witness, the defense remained the adverse party, the only one who was entitled to move the court to introduce the report into evidence. Because the defense did not do so, the report should not have come in under Evid.R. 612.

Moreover, when a document that has been used to refresh a witness's recollection is submitted to the jury pursuant to Evid.R. 612, the document is not being offered as substantive evidence. Weissenberger, Ohio Evidence (1998) 285–286, Section 612.4. *Dayton v. Combs* (1993), 94 Ohio App.3d 291, 298, 640 N.E.2d 863, 867–868. Instead, it is being offered as a basis to evaluate the testimony of the

---

2. Here, I note that the state made no objection to the defense inspecting the report.

3. It would appear from *State v. Goff* (1998), 82 Ohio St.3d 123, 136–137, 694 N.E.2d 916, 926–927, that the defense could be the first party to use a document to refresh a witness's memory on cross-examination.

witness. Thus, unless the document had some other basis for admissibility as substantive evidence, the trial court should have instructed the jury to consider the document only for the limited purpose of assessing credibility. Weissenberger. No such charge was given to the jury in the case at bar.

I also believe that the trial court erred when it held, in the alternative, that the report was admissible as a test score under Evid.R. 803(8). In this regard, the Supreme Court of Ohio has held that Evid.R. 803(8) "prohibits the introduction of reports which recite an officer's observations of criminal activities or observations made as part of an investigation of criminal activities. * * * [It] does not prohibit introduction of records of a routine, intra-police, or machine maintenance nature, such as intoxilyzer calibration logs." *State v. Ward* (1984), 15 Ohio St.3d 355, 358, 15 OBR 477, 479, 474 N.E.2d 300, 302.

By characterizing the report as a test score, the trial court was attempting to classify the report in the second admissible category of records, such as breath analyzer calibration logs. However, it is obvious that the report contains Trooper March's observations of criminal activities made during his investigation in the case. For example, Trooper March indicated on the report that appellant had a moderate odor of alcoholic beverage about her person, that her speech was slow, and that she failed various field sobriety tests. This report is not a record of a routine, intrapolice, or machine-maintenance nature. It is, rather, a document containing the individual observations Trooper March made during his criminal investigation of appellant.

Other Ohio appellate courts have also found the "Ohio State Highway Patrol Impaired Driver Report" to be inadmissible under Evid.R. 803(8). *State v. Joyce* (June 12, 1998), Hamilton App. No. C–970642, unreported, 1998 WL 315913; *State v. McDaniel* (Feb. 21, 1995), Meigs App. No. 94CA08, unreported, 1995 WL 75394.

If the trial court erred by admitting State's Exhibit C into evidence, the query turns to whether the error was harmless beyond a reasonable doubt. I believe it was harmless error because it was merely cumulative of the officer's testimony. As previously indicated, there were no additional prejudicial revelations that had not already been testimony. Thus, there is no merit to this assignment.

Based upon my analysis concerning the second and fourth assignments of error, I would affirm the trial court's judgment in this matter.