JOURNAL ENTRY and OPINION
{¶ 1} In 1998, the United States Court of Appeals for the Sixth Circuit granted a writ of habeas corpus to George Seiber on grounds that his 1987 conviction for felonious assault on a peace officer, theft of drugs and possession of criminal tools had been unfairly obtained as the state (1) failed to disclose that it had promised an inmate witness favorable treatment in exchange for his testimony and (2) failed to disclose to the defense a preliminary report detailing the inaccuracies of a key witness's physical description of the perpetrator. See Seiberv. Coyle (C.A.6, 1998), No. 97-3002. The state declined to retry Seiber on grounds that key witnesses could not be assembled for another trial. Seiber then filed this wrongful imprisonment action. The parties tried the matter on briefs to the court, and the court held that Seiber failed to show by a preponderance of the evidence that the offenses were not committed by him or were not committed by any person. Seiber appeals from that ruling.
 {¶ 2} Seiber needed to establish the elements of a wrongful imprisonment claim in the court of common pleas as a predicate to bringing an action for monetary damages in the court of claims. The elements of a wrongful imprisonment claim are stated in R.C. 2743.48(A). The state and Seiber stipulated that Seiber met four of the five elements for establishing a wrongful imprisonment claim under that section: (1) Seiber was convicted of a felony; (2) he was sentenced for that conviction; (3) the conviction was vacated, dismissed, or reversed; (4) no further prosecution was attempted or allowed for that conviction or any act associated with that conviction. The only element to be determined was the fifth — whether the offense for which Seiber was found guilty was not committed by him or was not committed at all.
 {¶ 3} The facts proved by the state at the underlying criminal trial established that two security officers reported to a drugstore in response when a security alarm went off. One guard entered the store; the other remained outside. The guard who entered the store testified that he saw a male wearing overalls and a knit cap exiting the store through a hole in the roof. At about the same time, police from the city of Cleveland arrived. An officer testified that he saw a figure, clad in overalls and a knit cap, on the roof. The officer ordered the suspect to freeze, but the suspect began shooting. A volley of shots were fired before the suspect jumped from the building and escaped. Stolen prescription drugs were found abandoned on the rooftop, as well as a long, thin metal tool which the police believed had been used to cut an opening through the store roof.
 {¶ 4} A police artist used a description of the suspect to draw a composite sketch of the suspect. Local newspapers ran the sketches in conjunction with articles about the crime. Two informants called the police and mentioned Seiber as the person depicted in the sketch. The police spoke with a woman who claimed to be a friend of Seiber's brother and learned that Seiber had recently injured his foot.
 {¶ 5} Thinking that Seiber might have been injured during the jump from the roof of the drugstore, the police made inquiries at the hospital nearest to Seiber's home. A nurse at that hospital indicated that two days after the theft he treated Seiber for fractures to his left heel, right middle toe, and a fractured skull. The nurse confirmed that Seiber had been wearing work overalls and a knit hat at the time of treatment. The nurse also said that Seiber's wounds were twenty to thirty hours old at the time he came in for treatment. When asked to describe how he suffered his injuries, Seiber initially told the nurse that he fell off a ladder, but then changed his story to say that he jumped from a second story window. Seiber had earlier told the nurse that he was having domestic problems at home, so the nurse concluded that Seiber may have been suicidal.
 {¶ 6} Seiber denied involvement in the crime, but gave contradictory versions of how he sustained his foot injuries. He first told the police that he fell out of the window while washing windows. The police found that hard to believe, as Seiber's windows were "extremely filthy." Seiber later said that he had locked himself out of his apartment and was climbing up the outside of the building when he fell. The police found work overalls in Seiber's apartment, but he denied owning them, saying they belonged to Edward Parker. The police also recovered a gun from the apartment, but were unable to link it or the overalls to the crime.
 {¶ 7} Edward Parker, the man whom Seiber said owned the overalls found at his apartment, testified for the state. At the time he testified, he was being held in the county jail. Parker testified that Seiber stole drugs from drugstores for resale, and that he had been one of Seiber's customers. He told the jury how Seiber would enter the drugstores by using a cutting tool to enter through the roofs. There was other testimony establishing that Seiber worked as a roofer and would have had access to such tools.
 {¶ 8} The Sixth Circuit granted the writ of habeas corpus for two reasons. First, it found the state failed to divulge a conversation between an assistant prosecuting attorney and Parker in which the two discussed whether Parker's probation might be transferred to another county in exchange for his testimony. Second, the court of appeals found that the state should have divulged the contents of a preliminary police report which listed the suspect's age as being half that of Seiber's age at the time and went on to note that all other aspects of the suspect's physical features were unknown. The court of appeals found the absence of a specific description material in light of the strong description given by the officer who exchanged gunfire with Seiber.
 {¶ 9} Seiber bore the burden of proving that he did not commit the offenses or that the offenses were not committed at all. State ex rel.Tubbs-Jones, Pros. Atty. v. Suster (1998), 84 Ohio St.3d 70, 72. He did not argue that the offenses were not committed at all, as the evidence rather clearly showed otherwise. Instead, he maintained that he did not commit the offenses. Because the court resolved this question in its capacity as trier of fact, we review the court's judgment to determine whether it was against the manifest weight of the evidence. Palmer v.State (Oct. 13, 1999), Medina App. No. 2878-M.
 {¶ 10} Seiber's evidentiary material in support of establishing the fifth element of the wrongful imprisonment claim consisted entirely of Parker's affidavit in which he recanted his testimony against Seiber, along with a series of letters that Parker sent to Seiber in which he explained his reasons for giving false testimony. Seiber also incorporated the Sixth Circuit opinion granting the writ of habeas corpus. These materials were not enough, however, to show that he did not commit the offense.
 {¶ 11} The courts view a witness's recantation of trial testimony as inherently suspect and therefore subject recantations to the closest scrutiny. State v. Bradley (1995), 101 Ohio App.3d 752, 758-759. As one might suspect, Parker's affidavit suffered from credibility problems. He admitted that he had been purchasing drugs from Seiber and was unable to pay. In order to "get rid of him," Parker thought he could testify against Seiber and presumably have him locked up. Parker's affidavit then contradicts his motivation for testifying because he claimed that he was told that the state had a weak case against Seiber and that Seiber "probably wouldn't be convicted anyway." The trier of fact could reasonably wonder which was true: either Parker wanted Seiber to go to prison, or he testified thinking that Seiber would be acquitted and his testimony would not cause any harm. The affidavit fails to resolve this question and the trier of fact could find the affidavit wholly incredible for that reason.
 {¶ 12} And there is more. Parker closes his affidavit by saying, "If I had known his sentence would have been so severe, my testimony would have been entirely different." Once again, Parker contradicted his claim that he initially testified against Seiber in order to "get rid of him." If Parker's testimony was motivated by a desire to "get rid of" Seiber, one could reasonably think that Parker would have wanted Seiber to go away for the longest period of time, particularly since Parker rather ominously acknowledged that Seiber was "known to eventually get what is owed to him."
 {¶ 13} Seiber also relied on the Sixth Circuit opinion. With all due respect to the Sixth Circuit, we disagree with the panel's conclusion. For example, the court of appeals did not mention that Seiber gave four different versions of how he suffered his foot injuries, one of which was so implausible that the police started "laughing" when he recited it.
 {¶ 14} The court of appeals held that the assistant prosecuting attorney's statements about looking into Parker's request for a transfer of probation "amounted to a promise" that Parker would be transferred to another jurisdiction if he agreed to testify. In reaching this conclusion, the Sixth Circuit panel ignored its own recitation of the facts that showed the assistant prosecuting attorney "didn't know anything about probation" but would "look into seeing if his probation could be transferred to some other jurisdiction." A promise to "look into" something is not the same thing as guaranteeing that it will be done.
 {¶ 15} The "preliminary police report" that the Sixth Circuit said contained exculpatory evidence was nowhere near as important as the court of appeals believed. The report was a departmental copy of an "offense/incident report." The report is a computer printout containing blank lines for such physical descriptions as eye color, hair style, eyes, facial oddities, teeth, complexion, missing body parts, tattoos, scars or birthmarks, and general appearance. The suspect's age was listed as 25, which the court of appeals noted was half Seiber's age at the time of trial. This fact should not have come as any surprise to the defense, however, as the Crimerstoppers information published in local newspapers listed the age of the suspect as being 28-32 years old. SeeState v. Seiber (Sept. 2, 1993), Cuyahoga App. No. 63717. As this court previously noted, "* * * evidence that initial reports indicated that the suspect appeared younger than his actual age was simply cumulative." Id. Moreover, nothing else about the detective's physical description of the suspect could be challenged, as the emergency room nurse fully corroborated the detective's description of Seiber's clothing.
 {¶ 16} Regardless of our disagreement with the Sixth Circuit, we are compelled to follow its decision. Nothing in that decision, however, dictates a finding that Seiber did not commit the charged offenses. The state presented a compelling case of circumstantial evidence that closely identified Seiber's clothing and injuries he might have suffered when jumping off the roof. Even if the court were to have credited Parker's affidavit, Parker did not recant his claim that Seiber sold drugs — this would be enough to suggest Seiber's motive in committing the robbery. Accordingly, we find competent, credible evidence to support the court's judgment.
 {¶ 17} Judgment affirmed.
 {¶ 18} It is ordered that appellee recover of appellant its costs herein taxed.
 {¶ 19} The court finds there were reasonable grounds for this appeal.
 {¶ 20} It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
 {¶ 21} A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J., CONCURS.
 JAMES D. SWEENEY, P.J., CONCURS IN JUDGMENT ONLY.
 KEYWORD SUMMARY
Wrongful imprisonment.