OPINION
{¶ 1} The State of Ohio appeals from an order suppressing evidence. We will reverse.
 I {¶ 2} The trial court spelled out the facts in its suppression order. These facts find ample support in the record, and we adopt them as our own narration of the facts.
 {¶ 3} "On Sunday, April 13, 2008, Officer Imwalle of the Dayton Police Department *Page 2 
was on routine patrol in a marked cruiser in the old North Dayton neighborhood. Officer Imwalle has been employed by the Dayton Police Department for six years. She was a single person crew on that date and was then aware of some previous reports of illegal drugs sales at or near the intersection of Paw Paw Street and Bickmore Avenue in the old North Dayton neighborhood of the City of Dayton, Ohio.
 {¶ 4} "At about 3:45 p.m., Officer Imwalle observed a black Grand Cherokee automobile at the intersection of Paw Paw Street and Bickmore Avenue. The black Cherokee stopped at the intersection for several minutes and then a signal light was activated and the vehicle turned. Officer Imwalle followed the black Grand Cherokee to the intersection of Bickmore and Valley Street. The Grand Cherokee again stopped at that intersection and failed to move for several minutes. Then the signal was made by the electronic signal light and the Grand Cherokee completed a turn.
 {¶ 5} "On this afternoon at those two locations, there were no other cars on the streets. The black Grand Cherokee did not encounter any traffic on Bickmore, Paw Paw or Valley Streets. The only other car in the vicinity at the time was Officer Imwalle's cruiser.
 {¶ 6} "Officer Imwalle felt that traffic violations had occurred at the intersections of Paw Paw and Bickmore and Bickmore and Valley. The officer was under the impression at that time that the driver of the black Grand Cherokee should have initiated a turn signal one hundred feet from the intersections prior to making a turn. The officer was of the view that Section 71.31 of the General Code of Ordinances of the City of Dayton had been violated. So Officer Imwalle initiated a traffic stop of the black Grand Cherokee vehicle.
 {¶ 7} "Officer Imwalle approached the black Grand Cherokee and encountered the *Page 3 
driver, Defendant, Brian A. Bartone. Officer Imwalle asked to see Mr. Bartone's driver's license. Mr. Bartone was pale and had dark circles around his eyes. He fumbled with his wallet attempting to get his driver's license. Due to this behavior, Officer Imwalle asked Mr. Bartone if there was anything she needed to know. Defendant responded, `No.' Officer Imwalle used her in-car computer and acquired information about a prior drug arrest of Defendant. She also acquired some dated information about Defendant's contact with Dayton Police. She was not able to determine if Defendant had ever been convicted of any drug offenses.
 {¶ 8} "Officer Imwalle went back to Defendant and asked if she could search his motor vehicle. Defendant did not consent to such a search. So Officer Imwalle had him get out of the vehicle and she placed him in the rear of her cruiser while she prepared the traffic citation.
 {¶ 9} "As Officer Imwalle executed her duty, she called for a City of Dayton canine unit. She was advised that no City of Dayton canine unit was available at that time. Officer Imwalle was advised shortly thereafter that a City of Huber Heights canine unit was available and would be on its way.
 {¶ 10} "About ten minutes after Officer Imwalle received the call from dispatch about the City of Huber Heights canine unit, the dog arrived. Officer Harlow of the Huber Heights Police Department had the dog perform an `open air' sniff. The dog `hit' on the Defendant's car. The dog contacted the vehicle near the passenger side doors.
 {¶ 11} "After the dog `hit' on the car, Officer Imwalle and several other City of Dayton officers, who had arrived, searched the Cherokee. This search disclosed a white chunky substance in a container near the seat and console. A suspected crack pipe was found in the center console. The white chunky substance was tested with a cobalt reagent. The substance *Page 4 
turned blue indicating a positive test.
 {¶ 12} "The Defendant was arrested for the offense of Possession of Cocaine and advised of his right to remain silent. Officer Imwalle advised Mr. Bartone of the various Miranda rights by use of a card.
 {¶ 13} "Eventually, Mr. Bartone agreed to speak. At first, he attempted to negotiate with the officer. He said he would speak if she would give him a cigarette. She refused to engage in such a deal. However, she eventually retrieved a cigarette from Defendant's vehicle and gave it to him. After he had the cigarette, Defendant agreed to speak. Officer Imwalle did not re-`Mirandize' Defendant after she had retrieved the cigarette. Defendant gave an oral statement that he had cocaine. Defendant refused to provide a written statement."
 II {¶ 14} The trial court sustained Bartone's motion to suppress because it concluded that Officer Imwalle had unlawfully stopped Bartone because he had not committed a traffic offense. Because the stop was unlawful, the cocaine seized from Bartone's car and his inculpatory statement were suppressed as fruit of a poisonous tree.
 {¶ 15} The trial court concluded that Bartone had not violated Ordinance Section 71.31 because there was no traffic in the vicinity of where Officer Imwalle had observed him driving and, therefore, Bartone was not required to signal his intention to turn within the last 100 feet of travel prior to the turn.
 {¶ 16} The operative language of Ordinance 71.31 states:
 {¶ 17} "(A) No person shall turn a vehicle or trackless trolley or move right or left upon a highway unless and until such person has exercised due care to ascertain that the movement *Page 5 
can be made with reasonable safety, nor without giving an appropriate signal in the manner hereinafter provided.
 {¶ 18} "(B) When required, a signal of intention to turn or move right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle or trackless trolley before turning." (Emphasis ours).
 {¶ 19} The trial court reasoned that the "when required" language excused Bartone's failure to signal within the last 100 feet of travel where there were no other drivers who could benefit from Bartone's signaling. While this may not be an unreasonable interpretation of the ordinance, this interpretation has been rejected by several appellate districts construing R.C. 4511.39(A), or comparable ordinances, which in pertinent part are identical to Ordinance 71.31(A)(B). State v.Lowman (1992), 82 Ohio App.3d 831, 835-6 (12th District);State v. Sanders (1998), 130 Ohio App.3d 789, 799-800
(11th District); State v. Evans (Summit App. No. 19803), June 7, 2000 (9th District); State v. Dennowitz (Ross App. No. 99CA2491), Nov. 5, 1999 (4thDistrict).
 {¶ 20} Bartone attempts to distinguish these cases from his case because they involved more than a stop for a mere minor misdemeanor. This attempt is wide of the mark. What is of significance is that these cases stand for the proposition that Ordinance 71.31 imposes an absolute duty as to giving turn signals that is not conditioned on prevailing traffic conditions. The legislature, in enacting R.C. 4511.39, and the Dayton City Commission, in enacting Ordinance 71.31, could have expressly made the duty to signal dependent on traffic conditions but did not. See Lowman, at 835. Indeed, such language might well introduce an undesirable element of subjectivity which would be a disservice to the motoring public and law enforcement *Page 6 
alike.
 III {¶ 21} Bartone also attempts to justify the action of the court by asserting that he was unlawfully arrested for a minor misdemeanor, in violation of R.C. 2935.26.
 {¶ 22} The problem with this assertion is that Bartone was not arrested until after cocaine was found in his car. The fact that Officer Imwalle had Bartone sit in her cruiser while she prepared the citation and while the drug-sniffing dog was present did not equate with Bartone's being under arrest. (Officer Imwalle stated that putting Bartone in her cruiser while the dog was present was in part for his safety). Nor does it appear that Officer Imwalle took an unreasonable period of time to complete the traffic citation.
 IV {¶ 23} For the above reasons, the assignment of error — asserting that the trial court erred in suppressing evidence — is sustained, and the order suppressing evidence will be reversed.
 {¶ 24} The matter will be remanded to the trial court for further proceedings.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
Jill R. Sink
Richard S. Davis
 Hon. Timothy N. O'Connell *Page 1