OPINION
{¶ 1} Jason Davidson appeals from his conviction and sentence on one count of drug possession and one count of possessing criminal tools.
 {¶ 2} In his sole assignment of error, Davidson contends the trial court erred in overruling a suppression motion that preceded his no-contest pleas to the foregoing *Page 2 
charges. He claims police lacked reasonable, articulable suspicion to justify a traffic stop that led to discovery of the contraband.
 {¶ 3} The pertinent facts, as set forth in the trial court's decision and entry overruling the suppression motion, are as follows:
 {¶ 4} "On November 21, 2006, around 12:21 A.M., Officer Matt Kennard noticed a car that had several individuals parked at 3200 East Third Street, Dayton, Ohio. The officer noticed the car start to pull away from the curb, without signaling, and then stop and turn off its headlights. Believing that a traffic violation had occurred for not signaling to enter traffic, Officer Kennard pulled his cruiser in front of the car and initiated a traffic stop. The officer approached the driver's side to find the defendant. Officer Kennard asked the defendant for his driver's license to which the defendant responded it was suspended. The officer verified that the defendant's driver's license was under three different suspensions. Based on operating a motor vehicle without a valid driver's license, the defendant was placed under arrest and transported to the Montgomery County Jail. While at the jail, a search was conducted by the jail staff, which resulted in the finding of a baggie of suspected crack cocaine in the defendant's underwear. The drugs were tested indicating a positive result for the presence of cocaine." (Doc. #14 at 2).
 {¶ 5} The trial court reasoned that Officer Kennard lawfully had detained the vehicle based on his observation of a traffic violation, namely Davidson's act of pulling away from the curb without signaling. The trial court also concluded that Davidson lawfully was arrested for driving without a license and that the crack cocaine was discovered in his underwear during a search incident to arrest. Davidson entered no-contest *Page 3 
pleas and received an aggregate sentence of two and one-half years in prison.
 {¶ 6} In a June 4, 2008 decision and entry, we set aside anAnders brief, finding a non-frivolous issue as to whether Davidson's act of pulling away from the curb without signaling constituted a traffic offense. We appointed new counsel to file an appellate brief for Davidson.
 {¶ 7} In his new appeal, Davidson contends no statute or ordinance prohibited him from pulling away from the curb without signaling. Davidson discusses two Dayton ordinances, R.C.G.O. 71.31 and R.C.G.O. 72.05, but concludes that neither required him to signal under the facts of this case. Therefore, he claims no traffic violation occurred to justify a traffic stop. In response, the State argues that Davidson did violate the ordinances. Alternatively, the State contends R.C.G.O. 72.05 is ambiguous and asserts that Officer Kennard reasonably believed Davidson had violated it, regardless of whether a traffic violation actually occurred. Citing our decision in State v. Greer (1996), 114 Ohio App.3d 299, the State maintains that the exclusionary rule does not apply when an investigatory stop is based on a police officer's mistaken, but reasonable, belief that the conduct he observed violated the law.
 {¶ 8} It is well settled that a police officer may initiate a stop based on reasonable, articulable suspicion that a minor traffic violation has occurred. State v. Buckner, Montgomery App. No. 21892,2007-Ohio-4329, ¶ 8. Here Officer Kennard detained Davidson's vehicle by activating his overhead lights and parking his cruiser directly in front of it. He testified that he initiated the stop because Davidson had pulled two to three feet away from the curb without signaling. Officer Kennard did not identify any particular statute or ordinance that Davidson violated by failing to signal when *Page 4 
moving his vehicle away from the curb.[1]
 {¶ 9} Davidson argues that the only potentially applicable ordinances, R.C.G.O. 71.31 and R.C.G.O. 72.05, were not violated. In relevant part, R.C.G.O. 71.31, which is identical to R.C. 4511.39, provides:
 {¶ 10} "(A) No person shall turn a vehicle or trackless trolley or move right or left upon a highway unless and until such person has exercised due care to ascertain that the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided.
 {¶ 11} "(B) When required, a signal of intention to turn or move right of left shall be given continuously during not less than the last one hundred feet traveled by the vehicle or trackless trolley before turning."
 {¶ 12} In State v. Ellington (May 14, 1999), Montgomery App. No. 17405, we declined to decide whether failing to signal when pulling away from a curb violates R.C.G.O. 71.31. In State v. Brewer (Nov. 5, 1999), Montgomery App. No. 17734, we noted the trial court's issuance of "an exhaustive decision [holding] that R.C.G.O. 71.31 does not apply to a motorist who fails to utilize a turn signal when pulling a parked car from a curb on a residential street." Unfortunately, the applicability of R.C.G.O. 71.31 was not raised as an issue on appeal inBrewer. Instead, the State argued in Brewer that the second ordinance, R.C.G.O. 72.05, prohibited pulling away from a curb without *Page 5 
signaling. That ordinance provides:
 {¶ 13} "Any vehicle attempting to reenter traffic while halted parallel or diagonal with the curb shall yield the right-of-way to oncoming traffic in the street approaching from the rear. The parked vehicle shall proceed into the line of traffic only after the driver has given the appropriate signal which indicates his intention of turning from the curb and into the line of traffic. The vehicle shall in no event enter the line of traffic until the driver has ascertained that no hazard exists."
 {¶ 14} We expressed doubt in Brewer about whether R.C.G.O. 72.05 applied where there was "no evidence of any oncoming traffic approaching from the rear of the defendant's vehicle when he drove away from the curb." We did not decide the issue, however, because the State had failed to allege a violation of R.C.G.O. 72.05 in the trial court. Finally, in State v. Bartone, Montgomery App. No. 22920, 2009-Ohio-153, we recently concluded that a lack of traffic did not excuse a driver from signaling one hundred feet in advance of a turn at an intersection pursuant to R.C.G.O. 71.31. We reasoned that the ordinance imposed "an absolute duty as to giving turn signals that is not conditioned on prevailing traffic conditions." Id. at ¶ 20.
 {¶ 15} Having reviewed the Dayton ordinances at issue, we conclude that Davidson's act of pulling away from the curb without signaling did not violate R.C.G.O. 71.31. That ordinance appears to address signaling when turning or changing lanes while already driving upon a roadway. It requires a signal to be given not less than one hundred feet before a move. The second ordinance, R.C.G.O. 72.05, specifically addresses the act of pulling away from a curb. Therefore, we find it to be the applicable ordinance in Davidson's case. As set forth above, R.C.G.O. 72.05 provides: *Page 6 
 {¶ 16} "Any vehicle attempting to reenter traffic while halted parallel or diagonal with the curb shall yield the right-of-way to oncoming traffic in the street approaching from the rear. The parked vehicle shall proceed into the line of traffic only after the driver has given the appropriate signal which indicates his intention of turning from the curb and into the line of traffic. The vehicle shall in no event enter the line of traffic until the driver has ascertained that no hazard exists."
 {¶ 17} Unlike R.C.G.O. 71.31, the foregoing ordinance does not address movement "upon a highway." Instead, it addresses "reentering traffic," yielding to "oncoming traffic," and proceeding "into the line of traffic." Specifically, the ordinance obligates a driver to signal before entering "into the line of traffic." As we suggested inBrewer, supra, it reasonably may be read as requiring the presence of actual traffic before a signal is required. Even if R.C.G.O. 72.05 is ambiguous in this regard, the ambiguity must be resolved in Davidson's favor. State v. Bartrum, 121 Ohio St.3d 148, 151, 2009-Ohio-355, ¶ 18.
 {¶ 18} In the present case, Officer Kennard testified that he observed a traffic violation when he saw Davidson's vehicle "pulling into traffic" without signaling. (Suppression hearing at 6). Officer Kennard then stated that he stopped the vehicle for "failing to use a signal pulling into the lane of traffic." (Id. at 7). As set forth above, pulling into a lane of traffic without signaling does not violate R.C.G.O. 72.05 if no other vehicles are present. In light of Officer Kennard's additional testimony, however, that he saw Davidson "pulling into traffic," the trial court could have inferred that at least one other vehicle was present nearby on East Third Street. Therefore, Officer Kennard had reasonable, articulable suspicion of a traffic violation, which was sufficient to justify a *Page 7 
traffic stop. Accordingly, we overrule the sole assignment of error.
 {¶ 19} The judgment of the Montgomery County Common Pleas Court is affirmed.
FAIN and GRADY, JJ., concur.
[1] The State did not argue in the trial court, and does not assert on appeal, that Officer Kennard's traffic stop was justified based on Davidson's act of stopping his vehicle partially in the roadway and turning off his headlights. Therefore, we have no occasion to address whether this conduct might have justified an investigatory stop. The State's only argument in support of the traffic stop is that Davidson pulled away from the curb without signaling. *Page 1