[Cite as *State v. Powell*, **2018-Ohio-1223**.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27632 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-2746 |
| | : | |
| RODNEY L. POWELL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 30th day of March, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
Attorney for Plaintiff-Appellee

LORI R. CICERO, Atty. Reg. No. 0079508, 500 East Fifth Street, Dayton, Ohio 45402
Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, P.J.

**{¶ 1}** Defendant-Appellant, Rodney Powell, appeals from his conviction and sentence on one count of improper handling of firearms in a motor vehicle in violation of R.C. 2923.16(B), a fourth-degree felony. After a no-contest plea, Powell was sentenced to various community control sanctions.

**{¶ 2}** Powell contends that the trial court erred by failing to find that a police stop of his motor vehicle violated Article I, Section 14 of the Ohio Constitution and the Fourth Amendment to the United States Constitution. For the reasons discussed below, the trial court did not err in overruling Powell's motion to suppress. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

**{¶ 3}** On September 2, 2016, a complaint was filed in Dayton Municipal Court, alleging that Powell had violated R.C. 2923.16(B) by improperly handing a firearm in a motor vehicle on September 2, 2016. Powell subsequently waived a preliminary hearing and agreed to be bound over to the common pleas court. An indictment was then filed in common pleas court on October 7, 2016, charging Powell with the above offense. Powell filed a motion to suppress on November 9, 2016, and the court held a suppression hearing on December 16, 2016.

**{¶ 4}** At the hearing, the court heard testimony from Dayton Police Officer, James Campolongo, and from Powell. Officer Campolongo testified that he was on patrol on September 2, 2016. He was driving a marked cruiser, was in the uniform of the day, and was alone in the cruiser.

**{¶ 5}** At about 1:40 a.m., Campolongo was driving on Paul Laurence Dunbar Street, going north towards West Riverview Avenue, when he saw a blue Dodge truck sitting at a stop light. The truck was stopped in the right-hand turn lane, but no turn signal was flashing. As Campolongo approached closer to the vehicle, a turn signal went on, but the vehicle did not move; it was still stopped at the light. When the light turned green, the truck turned right onto West Riverview, and Campolongo followed the truck. Campolongo then activated his overhead lights to initiate a traffic stop based on the fact that the driver did not have his turn signal on 100 feet prior to a turn.

**{¶ 6}** The vehicle was slow to pull over, but stopped on Ferguson Avenue, which is a little bit north of West Riverview. Because Campolongo was alone, he used the IPA system to tell the driver to turn off his car. Before Campolongo got out of the cruiser, he notified dispatch and asked for backup. After Campolongo made contact with the driver (Powell), he had an interaction with Powell that resulted in a search of the vehicle, during which a firearm was discovered.

**{¶ 7}** Campolongo testified that no other vehicles were around at the time. He also said that his interpretation of the ordinance involved (Revised Code of General Ordinances of the City of Dayton, Ohio ("R.C.G.O.") 71.31), was that it was subject to traffic conditions at the time and applied if a failure to signal affected other traffic. According to Campolongo, he was affected by this failure when he pulled in behind Powell's truck.

**{¶ 8}** Powell testified that he was driving towards his home when he stopped in a right-turn only lane. He initially activated his turn signal and made a partial turn of the wheel, which caused his turn signal to go off. No other traffic was around. As Powell

looked in his rear-view mirror, he saw a vehicle approaching at a high rate of speed. At that point, Powell realized his turn signal was off, and he turned it back on because he did not know if the vehicle was going to hit him. He indicated he was in a dangerous area, and people were out celebrating because it was Labor Day weekend. When the car got closer, Powell realized it was a police car. Powell then turned right on West Riverview Avenue, and the officer waited for about a block and half before initiating the traffic stop.

{¶ 9} After hearing the evidence, the trial court overruled the motion to suppress. The court concluded that the officer had a reasonable, articulable suspicion of criminal activity based on Powell's failure to comply with the turn signal requirements. Powell subsequently pled no contest to the charge and was sentenced to community control sanctions. This appeal followed.

## II. Alleged Error in Overruling the Motion to Suppress

{¶ 10} Powell's sole assignment of error states that:

The Trial Court Erred by Failing to Find that the Stop of Appellant's Motor Vehicle Was in Violation of Article I, Section 14 of the Constitution of Ohio, and the Fourth Amendment to the United States Constitution.

{¶ 11} According to Powell, the language in R.C.G.O. 71.31 (and R.C. 4511.39, which is nearly identical) is vague and should not be interpreted to mean that using a turn signal "when required" means that a signal must be maintained continuously. Powell also argues that since he was stopped at the light, Officer Campolongo could not have known whether his turn signal was activated 100 feet before he turned. And finally,

Powell argues that the ordinance and statute improperly restrict a driver's freedom by requiring that the driver must always know 100 feet in advance that he or she will be making a turn.

{¶ 12} In its decision, the trial court noted that the police officer was incorrect when he concluded that enforcement of the ordinance was subject to traffic conditions at the time. Nonetheless, based on prior authority from our district, the trial court held that the police officer lawfully stopped Powell and that any subjective motivation for the stop was irrelevant.

{¶ 13} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." (Citation omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citations omitted.) *Id.*

{¶ 14} "The Fourth Amendment to the United Stated Constitution prohibits unreasonable searches and seizures. Stopping an automobile constitutes a 'seizure.' " *State v. Rastbichler*, 2d Dist. Montgomery No. 25753, 2014-Ohio-628, ¶ 16, citing *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). "The United States Supreme Court has stated that a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is

committing, or is about to commit a crime." (Citations omitted.) *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7. This includes even minor traffic violations. *State v. Hardy*, 2d Dist. Montgomery No. 24114, 2011-Ohio-241, ¶ 20, citing *Mays* at ¶ 7-8.

**{¶ 15}** "Further, '[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances.' " *Mays* at ¶ 7, quoting *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus. "[T]hese circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." (Citations omitted.) *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

**{¶ 16}** In *Rastbichler*, we specifically considered R.C.G.O. 71.31. The current version, which is unchanged from the ordinance discussed in *Rastbichler*, provides, in pertinent part, that:

> (A) No person shall turn a vehicle or trackless trolley or move right or left upon a highway unless and until such person has exercised due care to ascertain that the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided.
>
> (B) When required, a signal of intention to turn or move right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle or trackless trolley before turning.

R.C.G.O. 71.31 (Dec. 20, 2017).[1] *See also Rastbichler,* 2d Dist. Montgomery No. 25753,

---

[1] This ordinance can be found at: https : // library . municode . com / oh / dayton / codes / code of ordinances ? nodeId = TITVIITRC O CH71 RUOP DIV2 TUMO S71.31 TUSTSI (accessed on January 31, 2018).

2014-Ohio-628, at ¶ 19, and R.C. 4511.39(A) (which contains the same general requirements as R.C.G.O. 71.31).

{¶ 17} In *Rastbichler*, we rejected the defendant's contention that R.C.G.O. 71.31 only requires a turn signal if there is traffic in the area that is potentially affected. Instead, we stated that this ordinance " 'imposes an absolute duty as to giving turn signals that is not conditioned on prevailing traffic conditions.' " *Rastbichler* at ¶ 20, quoting *State v. Bartone*, 2d Dist. Montgomery No. 22920, 2009-Ohio-153, ¶ 20.

{¶ 18} Thus, Officer Campolongo was incorrect in his interpretation, as the trial court noted. However, as the trial court also stressed, the officer's mistake was irrelevant. Regardless of the conditions, Powell had an absolute duty to use turn signals continuously to signal his intention to turn.

{¶ 19} In this regard, we note that *Bartone* involved facts very similar to those in the case before us. In *Bartone*, a police officer observed the defendant's vehicle while the vehicle was stopped at an intersection. After several minutes, a turn signal was activated, and the driver turned. The vehicle again stopped at another intersection for several minutes, and the turn signal was again activated, followed by another turn. *Id.* at ¶ 3-4. As here, there were no other cars on the street, and the officer's cruiser was the only car in the vicinity. After stopping the vehicle for the traffic violations, the officer discovered drugs and the defendant was charged with possession of cocaine. *Id.* at ¶ 5-13.

{¶ 20} On appeal, we reversed the trial court, which had sustained the defendant's motion to suppress evidence. Specifically, the trial court concluded that the defendant had not violated R.C.G.O. 71.31 "because there was no traffic in the vicinity of where

Officer Imwalle had observed him driving and, therefore, [the defendant] was not required to signal his intention to turn within the last 100 feet of travel prior to the turn." *Id.* at ¶ 15.

{¶ 21} In analyzing the matter, we gave special consideration to the words *"[w]hen required,"* which is the part of the ordinance that Powell currently challenges. (Emphasis sic.) *Bartone* at ¶ 18. We noted that:

The trial court reasoned that the "when required" language excused Bartone's failure to signal within the last 100 feet of travel where there were no other drivers who could benefit from Bartone's signaling. While this may not be an unreasonable interpretation of the ordinance, this interpretation has been rejected by several appellate districts construing R.C. 4511.39(A), or comparable ordinances, which in pertinent part are identical to Ordinance 71.31(A)(B). *State v. Lowman* (1992), 82 Ohio App.3d 831, 835-6, 613 N.E.2d 692 (12th District); *State v. Sanders* (1998), 130 Ohio App.3d 789, 799-800, 721 N.E.2d 433 (11th District); *State v. Evans* (Summit App. No. 19803), June 7, 2000 (9th District); *State v. Dennowitz* (Ross App. No. 99CA2491), Nov. 5, 1999 (4th District).

Bartone attempts to distinguish these cases from his case because they involved more than a stop for a mere minor misdemeanor. This attempt is wide of the mark. What is of significance is that these cases stand for the proposition that Ordinance 71.31 imposes an absolute duty as to giving turn signals that is not conditioned on prevailing traffic conditions. The legislature, in enacting R.C. 4511.39, and the Dayton City Commission, in enacting Ordinance 71.31, could have expressly made the duty to signal

dependent on traffic conditions but did not. *See Lowman*, at 835, 613 N.E.2d 692. Indeed, such language might well introduce an undesirable element of subjectivity which would be a disservice to the motoring public and law enforcement alike.

*Bartone*, 2d Dist. Montgomery No. 22920, 2009-Ohio-153, at ¶ 19-20.

{¶ 22} The wording of R.C.G.O. 71.31 has not changed since *Bartone*, nor has there been any change in R.C. 4511.39(A). The trial court cited both *Rastbichler* and *Bartone* in its suppression decision, and correctly relied on these cases. *See* Decision, Order and Entry Overruling Defendant's Motion to Suppress and Setting Scheduling Conference, Doc. #25, p. 4.

{¶ 23} The trial court also cited *Hardy*, 2d Dist. Montgomery No. 24114, 2011-Ohio-241, for the proposition that R.C.G.O. 71.31 does not contain any exception for vehicles that are in turn only lanes or through lanes. Doc. #25, p. 4, citing *Hardy* at ¶ 25. Again, we agree with the trial court. As in the above cases, the defendant in *Hardy* argued that R.C.G.O. 71.31 is vague. In response, we stated that:

We find nothing vague about Dayton R.C.G.O[.] Sec. 71.31(A) and (B). Dayton R.C.G.O[.] Sec. 71.31(A) prohibits a driver from turning without ensuring that such turn can be performed safely and giving an appropriate signal. Dayton R.C.G.O[.] Sec. 71.31(B) specifies that the turn signal must be given continuously for at least 100 feet prior to the turn. "[T]he ordinance has sufficient clarity and details to put a person of ordinary intelligence on notice of what conduct is prohibited * * *, [and] [t]he language of the ordinance provides fair warning that failure to signal at least 100 feet

prior to turning will expose a driver to liability." *State v. Acord*, Ross App. No. 05 CA 2858, 2006-Ohio-1616, ¶ 19 (concluding that Chillicothe City Ordinance 331.14, which is identical to R.C. 4511.39(A), is not vague).

Hardy argues that she was not required to use a turn signal prior to turning onto North Smithville Road, because the intersection of Smithville and Woodley was a T-intersection, which required her to turn. Dayton R.C.G.O[.] Sec. 71.31(A) contains no exception for T-intersections (in fact, signaling in which direction a turn will be made would be helpful to other drivers or pedestrians at the intersection), and the ordinance is not rendered vague merely because the configuration of a particular intersection requires the driver to make a turn. *See State v. Bartone*, Montgomery App. No. 22920, 2009-Ohio-153, ¶ 20 (stating that the "Dayton City Commission, in enacting Ordinance 71.31, could have expressly made the duty to signal dependent on traffic conditions but did not.")

*Hardy*, 2d Dist. Montgomery No. 24114, 2011-Ohio-241, at ¶ 24-25.

**{¶ 24}** We see nothing to distinguish the current case from others we have decided. Whether or not drivers have previously signaled an intention to turn, the ordinance gives fair warning that drivers are required to maintain a signal until their turns have been completed. This makes sense, since the purpose of using turn signals is to warn other drivers of an intention to turn. As we have stressed in the past, the ordinance is not conditioned on traffic conditions at the time. If the City of Dayton wished to alter its ordinance to reflect that position, it could have done so. However, the City has not chosen that option.

**{¶ 25}** As to Powell's argument that the officer could not have cited him because he did not observe Powell traveling 100 feet, that argument is without merit, given our decision in *Bartone*. The facts in *Bartone* indicate that when the police officer first saw the defendant's car, the car was at an intersection. After stopping there for several minutes, the defendant then activated a turn signal and turned. *Bartone*, 2d Dist. Montgomery No. 22920, 2009-Ohio-153, at ¶ 4. Clearly, the police officer did not observe the defendant traveling 100 feet while failing to use his turn signal. Furthermore, while another similar violation occurred, during which the officer did see the defendant travel for a distance, we did not rest our decision on that fact. Instead, we noted that the officer felt traffic violations had occurred at both intersections. *Id.* at ¶ 6.

**{¶ 26}** The Tenth District Court of Appeals also rejected a similar argument in *State v. Smith*, 10th Dist. Franklin No. 13AP-592, 2014-Ohio-712. In that case, the defendant parked about 20 to 30 feet from an intersection. When the defendant got back in his car, he went to the left around another parked car, came to the stop sign, and then activated his turn signal. *Id.* at ¶ 3. Police officers initiated a traffic stop and found drugs. *Id.* The pertinent traffic ordinance [C.C.C. 2131.14(a)] was similar to R.C.G.O. 71.31 and R.C. 4511.39(A). *Id.* at ¶ 4 and fn.1.

**{¶ 27}** In reviewing the denial of the defendant's motion to suppress, the court of appeals rejected the defendant's argument that he had not violated the ordinance because he was parked less than 100 feet from the intersection and could not have continuously signaled his turn for at least 100 feet as the ordinance required. *Id.* at ¶ 12. The court stated that "[t]he relevant question in this case is not whether appellant had a possible defense to the violation." *Id.*, citing *Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539,

894 N.E.2d 1204, at ¶ 17, and *State v. Acord*, 4th Dist. Ross No. 05CA2858, 2006-Ohio-1616, ¶ 13-15. The court then said that:

> Instead, the relevant question in the context of determining the constitutionality of a traffic stop is whether the officers had a reasonable suspicion that appellant committed a traffic violation. * * * Based on the events observed by the police officers, we conclude they had reasonable suspicion. The officers first observed appellant either as he approached or actually stopped at the stop sign. They did not know where he had come from or how far he had been driving down the road. What they did see, however, was that he did not activate his turn signal until he stopped at the stop sign. This is enough for a police officer to have reasonable suspicion that appellant violated C.C.C. 2131.14(a).

*Smith*, 10th Dist. Franklin No. 13AP-592, 2014-Ohio-712, ¶ 12, citing *Hardy*, 2d Dist. Montgomery No. 24114, 2011-Ohio-241, at ¶ 26. (Other citations omitted.)

{¶ 28} In light of the preceding discussion, the trial court did not err in overruling the motion to suppress. Consistent with the above cases, Officer Campolongo had a reasonable suspicion that Powell violated the ordinance, and the officer, therefore, was permitted to initiate a traffic stop. Accordingly, Powell's sole assignment of error is overruled.


### III. Conclusion

{¶ 29} Powell's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.


Copies mailed to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
Lori R. Cicero
Hon. Michael W. Krumholtz