[Cite as *State v. Bryant*, 2026-Ohio-389.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

STATE OF OHIO, : 

    Appellant, : 

vs. : 

CHRISTIN C. BRYANT, : 

    Appellee. : 

    : 

CASE NO. CA2025-05-050

OPINION AND
JUDGMENT ENTRY
2/9/2026

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2022-11-1623

Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellant.

Repper-Pagan Law, Ltd., and Christopher J. Pagan, for appellee.

### O P I N I O N

**M. POWELL, J.**

{¶ 1} The State of Ohio appeals from the decision of the Butler County Court of Common Pleas granting a motion to suppress evidence in a drug-possession case.

Because we hold that the traffic stop of appellee, Christin Bryant, was constitutionally valid, we reverse and remand.

## I. Factual and Procedural Background

{¶ 2} On the evening of November 17, 2022, Officer Brian Singleton of the Middletown Police Department was on patrol when he observed a white sedan that he had seen parked several times in the 400 block of Curtis Street, a downtown area he described as having frequent drug complaints and recent shootings. Around 6:58 p.m., Officer Singleton's marked cruiser and the sedan arrived nearly simultaneously at the four-way stop intersection of Fairmount Avenue and Young Street. Detective Singleton was traveling on Young Street, and Bryant, the driver of the sedan, was traveling on Fairmount Avenue, positioning his vehicle to the detective's right.

{¶ 3} Bryant stopped at the intersection without activating a turn signal. Officer Singleton therefore assumed Bryant intended to proceed straight. Extending the customary courtesy at four-way stops when two vehicles arrive at the same time, the officer flashed his cruiser's headlights to indicate that Bryant could proceed first. Only after the officer flashed his headlights, and while Bryant's vehicle remained stationary at the stop sign, did Bryant activate his left-turn signal. Bryant then drove through the intersection, turning left onto Young Street and passing Officer Singleton's police cruiser. Singleton found it suspicious that Bryant activated his left turn signal only after having stopped at the intersection and then turning so that he would be proceeding in the opposite direction Singleton was travelling.

{¶ 4} Middletown Ordinance 432.13(a)(2) states that "[w]hen required," a driver must signal his intention to turn 100 feet before turning. As Officer Singleton executed a U-turn to follow, he watched Bryant's vehicle immediately pull off to the side of Young Street without activating a turn signal. By the time the officer completed his U-turn and

activated his overhead lights to initiate a traffic stop, Bryant had already parked at the curb and exited the vehicle. Bryant, the sole occupant, walked toward the cruiser. When Officer Singleton attempted to obtain identifying information, Bryant fled on foot. The officer pursued and apprehended Bryant, who was placed under arrest. A search of the vehicle revealed suspected drugs.

{¶ 5} A Butler County grand jury indicted Bryant on one count of possession of cocaine in violation of R.C. 2925.11(A), a first-degree felony based on an alleged quantity between 27 and 100 grams. Bryant moved to suppress all evidence, arguing that Detective Singleton lacked probable cause or reasonable articulable suspicion to conduct the traffic stop because Bryant had not violated Middletown Ordinance 432.13(a)(2). Bryant's motion asserted that "the spirit of 432.13 was not broken" because he had not created any safety risk or inconvenienced other drivers.

{¶ 6} At the suppression hearing, the State called Officer Singleton as its sole witness. Video footage from his cruiser corroborated his testimony. Defense counsel cross-examined the officer but offered no witnesses or evidence. In closing, the prosecutor argued that Officer Singleton had probable cause to stop Bryant based on the turn-signal violation. Defense counsel argued that the stop was pretextual and that no danger resulted from Bryant's actions.

{¶ 7} The trial court granted the motion. After reading the text of Middletown Ordinance 432.13(a)(1) and (a)(2) into the record, the court expressed that it was "hung up" on the phrase "when required" in subsection (a)(2). The court found that Bryant had exercised due care when making his turn and acknowledged that Bryant's signal may not have been activated within 100 feet of the intersection. But the court reasoned that Bryant may not have known he intended to turn left until after the detective flashed his headlights. The court concluded that the turn-signal ordinance required a signal only

"when required," and that no signal was required here because Bryant's turn posed no danger: "There was no danger. There was no almost accident caused by this vehicle." The court expressed additional concern that Officer Singleton had been watching Bryant's vehicle because it was parked in a high-crime area without any specific complaints tying the vehicle to criminal activity. On these grounds, the court found that Officer Singleton lacked reasonable articulable suspicion or probable cause to conduct the stop and granted the motion to suppress.

{¶ 8} The State appealed.

## II. Analysis

{¶ 9} The single assignment of error alleges:

THE BUTLER COUNTY COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR WHEN IT GRANTED APPELLEE'S MOTION TO SUPPRESS.

### A. Standard of Review

{¶ 10} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Hentenaar*, 2020-Ohio-4503, ¶ 8 (12th Dist.). The trial court serves as the trier of fact and is therefore best positioned to resolve factual questions and evaluate witness credibility. We must accept the trial court's findings of fact if supported by competent, credible evidence. Id. But we independently review the trial court's application of law to those facts, without deference, to determine whether the facts satisfy the applicable legal standard. Id.

{¶ 11} In cases involving warrantless seizures, including traffic stops, the State bears the burden of proving that the stop was valid. *Xenia v. Wallace*, 37 Ohio St.3d 216, 218 (1988).

**B. The Constitutional Standard**

{¶ 12} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable traffic stops. *Hentenaa*r at ¶ 9. Ohio recognizes two types of reasonable traffic stops, each governed by a different constitutional standard. *State v. Ratliff*, 2020-Ohio-3315, ¶ 6-7 (12th Dist.). One is a noninvestigatory stop, which occurs when an officer directly observes a traffic violation, giving rise to probable cause to stop the vehicle. *Whren v. United States*, 517 U.S. 806, 810 (1996). The second is an investigative stop. "[A] traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." *State v. Mays*, 2008-Ohio-4539, ¶ 7, citing *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). Thus, "a police officer who lacks probable cause but whose observations lead him reasonably to suspect that a particular person's behavior is criminal may detain the person briefly to investigate the circumstances that provoked the suspicion." Id. at ¶ 13, citing *Berkemer* at 439. Whether an officer has probable cause or reasonable suspicion, "the stop is constitutionally valid regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question." *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 1996-Ohio-431 (police officer stopped vehicle after seeing it fail to signal a turn).

**C. The Turn-Signal Requirement**

**1. The Applicable Law**

{¶ 13} Middletown Ordinance 432.13 provides, in relevant part:

> (a)(1) No person shall turn a vehicle or move right or left upon a highway unless and until the person has exercised due care to ascertain that the movement can be made with reasonable safety, nor without giving an appropriate signal in the manner hereinafter provided.

(2) When required, a signal of intention to turn or move right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning . . . .

These divisions largely mirror R.C. 4511.39(A).

{¶ 14} The trial court interpreted the phrase "[w]hen required" in division (a)(2) to mean that Bryant was not obligated to signal because his turn posed no danger to other traffic. The court reasoned that this interpretation gives meaning to language that would otherwise be superfluous.

{¶ 15} The trial court's interpretation cannot be reconciled with this court's decision in *State v. Lowman*, 82 Ohio App.3d 831 (12th Dist. 1992). In that case, the defendant conceded that he did not signal his intent to enter the highway from a rest area but argued that no violation occurred because there was no approaching traffic. We rejected that argument, holding that R.C. 4511.39(A) imposed two distinct duties: a requirement of reasonable care in changing directions and a requirement to use a signal. Lowman at 835. The statute provided that a driver may not change direction until he has ascertained "'that the movement can be made with reasonable safety nor without giving an appropriate signal.'" (Emphasis added by the court.) Id. The signal requirement, we explained, "is set forth in absolute terms and is not modified by the language mandating reasonableness in changing directions." Id.

{¶ 16} We addressed the "[w]hen required" language directly. The defendant in *Lowman* argued that this phrase demonstrated the legislature's intent to make signaling conditional on traffic conditions. We disagreed:

> [T]he phrase "when required" simply refers to a situation in which the driver intends to change direction on the roadway. The phrase refers to the signal requirement as set forth in the first paragraph of the statute, and again there is no indication that this language was intended to make the requirement conditional. The legislature could have chosen a term such as

"when reasonable," but it did not do so. We decline to read
such language into the section.

Id.

{¶ 17} The Second District Court of Appeals adopted our reasoning in *State v. Bartone*, 2009-Ohio-153 (2d Dist.), and reaffirmed it in *State v. Rastbichler*, 2014-Ohio-628 (2d Dist.), holding that the City of Dayton's materially identical turn-signal ordinance "imposes an absolute duty as to giving turn signals that is not conditioned on prevailing traffic conditions." *Bartone* at ¶ 20.

{¶ 18} The phrase "[w]hen required" does not excuse a driver from signaling merely because no other traffic is present or because the turn can be executed safely without a signal. Rather, the phrase addresses when a signal is required in the first instance—when a driver intends to turn or move right or left on a highway.

{¶ 19} Bryant cites several cases to support the trial court's interpretation, including *State v. Paseka*, 2013-Ohio-2363 (6th Dist.); *State v. Dowty*, 2016-Ohio-4719 (2d Dist.); and *State v. Barnett*, 2018-Ohio-2486 (7th Dist.). But each of these cases addressed situations where some feature of the roadway or surrounding circumstances made the turn-signal requirement inapplicable or ambiguous. None involved what occurred here: a driver approaching a standard intersection who simply failed to signal his intention to turn within the required distance.

## 2. Application to the Facts

{¶ 20} It is undisputed that Bryant's vehicle approached the intersection of Fairmount Avenue and Young Street, stopped at the stop sign without a turn signal activated, and only activated the left-turn signal after Officer Singleton flashed his cruiser's headlights. The trial court acknowledged that Bryant had not used his turn signal within 100 feet of the intersection; instead, the court found that Bryant's signal was

activated only after he had stopped, while his vehicle remained stationary at the intersection.

{¶ 21} The ordinance requires signaling "when required," and as we explained in *Lowman*, that phrase "simply refers to a situation in which the driver intends to change direction on the roadway." *Lowman*, 82 Ohio App.3d at 835. The record does not reveal what Bryant intended as he approached the intersection. He may have been inattentive, unsure of his route, or confused about his location. He may have decided to turn left only at the last moment. Or he may have flipped on the turn signal in a last-minute effort to avoid Officer Singleton by heading in the opposite direction. But this much is certain: if Bryant intended to turn left as he approached the intersection, his failure to signal during the final 100 feet violated the ordinance.

{¶ 22} Ultimately, though, we need not decide whether Bryant actually violated the turn-signal ordinance. Even if the answer is unclear, Officer Singleton's stop was justified so long as he had reasonable suspicion that a violation had occurred. And he did. An officer need not be right about a traffic violation to conduct a lawful stop—he need only be reasonable. A reasonable mistake of law can still constitute reasonable, articulable suspicion to justify a traffic stop. *See State v. Egnor*, 2020-Ohio-327, ¶ 24 (12th Dist.) (noting that "even if [the officer] was mistaken in his belief that a traffic violation had occurred, a police officer's objectively reasonable belief that a traffic violation has occurred, including reasonable mistakes of law, can constitute reasonable suspicion to justify a traffic stop"); *Wilmington v. Conner*, 144 Ohio App. 3d 735, 740 (12th Dist. 2001) (stating that "the exclusionary rule may be avoided with respect to evidence obtained in an investigatory stop based on conduct that a police officer reasonably, but mistakenly, believes is a violation of law").

{¶ 23} The trial court got this wrong. Officer Singleton personally observed Bryant approach the intersection and come to a stop without activating his turn signal. Only after stopping did Bryant activate the signal. But under *Lowman*, Middletown's turn-signal ordinance requires a driver who intends to turn to signal "continuously during not less than the last 100 feet traveled by the vehicle before turning." Bryant plainly failed to do so. That omission gave Officer Singleton constitutionally sufficient grounds to initiate a traffic stop based on reasonable suspicion—whether or not we would ultimately conclude that Bryant violated the ordinance. And, as we explain below, Singleton had an independent basis for reasonable suspicion as well—when Bryant pulled off to the right side of the road, he again did so without signaling.

### D. Bryant's R.C. 2921.331 Argument

{¶ 24} On appeal, Bryant advances the novel argument that Officer Singleton's flash of his cruiser's headlights constituted a "lawful order, signal, or direction" under R.C. 2921.331(A), and that Bryant's duty to comply with that signal superseded his duty to signal his turn under the turn-signal ordinance. The argument, in essence, is that Bryant cannot be faulted for failing to signal within 100 feet of the intersection because he was responding to an officer's command to proceed. This argument fails for multiple independent reasons.

{¶ 25} *First*, Bryant never raised this argument before the trial court. His motion to suppress argued that he did not violate the turn-signal ordinance because "the spirit" of the ordinance was not broken and because his actions created no safety risk. He did not argue that R.C. 2921.331(A) excused any failure to signal, nor did he ask the trial court to interpret the relationship between the failure-to-comply statute and the turn-signal ordinance. Under *State v. Wintermeyer*, 2019-Ohio-5156, ¶ 18-19, a criminal defendant is required to state with particularity the legal and factual issues to be resolved in a

suppression motion. Arguments omitted from the motion are deemed forfeited. *Id*. Because Bryant failed to present his R.C. 2921.331(A) argument to the trial court, he has forfeited it on appeal.

{¶ 26} *Second*, even setting aside forfeiture, the argument fails on its merits. The record does not support the premise that Officer Singleton's flash of his headlights constituted a lawful order to proceed. Officer Singleton testified that he flashed his headlights to indicate that Bryant could go through the intersection because both vehicles had arrived at approximately the same time. This is the customary courtesy that drivers extend to one another at four-way stops; it is not a police directive carrying the force of R.C. 2921.331(A).

{¶ 27} *Third*, and most fundamentally, nothing about Officer Singleton's flash of headlights excused Bryant from his pre-existing obligation to signal his turn. Bryant had already approached the intersection without activating a turn signal. By the time Officer Singleton flashed his headlights, Bryant had already failed to signal during the last 100 feet of travel. Whether or not he violated the ordinance, Bryant's actions gave rise to reasonable suspicion of such a violation.

### E. The Alternative Basis: Failure to Signal When Pulling to the Curb

{¶ 28} The traffic stop is also valid on an alternative ground. After Bryant turned onto Young Street, he immediately pulled to the curb without activating a turn signal. Officer Singleton testified that Bryant "immediately pulled off to the side of the road, again, failing to signal."

{¶ 29} In *Rastbichler*, 2014-Ohio-628, the Second District held that a driver's failure to signal before pulling over to the curb violated the City of Dayton's materially identical turn-signal ordinance. The court noted that the defendant "did not contest the fact that he had failed to activate his turn signal before pulling over to the curb" and

- 10 -

concluded that this "failure to signal before pulling to the curb was a clear traffic violation which provided a lawful basis upon which the officers could initiate a traffic stop." *Rastbichler* at ¶ 20.

{¶ 30} So too here. Bryant's failure to signal before pulling to the curb on Young Street constitutes an independent traffic violation that justified the traffic stop. The State presented this argument to the trial court, the evidence supports it, and the trial court ignored it. Even if we harbored doubts about whether Officer Singleton's observations lead him reasonably to suspect that Bryant had violated the turn-signal ordinance at the intersection, we would still be compelled to conclude that the officer reasonably suspected that Bryant violated it moments later when he pulled to the curb without signaling.

**F. The State Did Not Forfeit Its Arguments**

{¶ 31} Bryant contends that the State forfeited its arguments by failing to cite *Lowman*, 82 Ohio App.3d 831, *Bartone*, 2009-Ohio-153, and *Rastbichler* to the trial court. This contention inverts the applicable legal standards.

{¶ 32} The forfeiture doctrine, as articulated in *Wintermeyer*, 2019-Ohio-5156, requires a party challenging a search or seizure to state the grounds for that challenge with particularity so that both the opposing party and the trial court are on notice of the issues to be resolved. *Wintermeyer* at ¶ 18. The doctrine serves to prevent a party from "sandbagging" the trial court by withholding arguments that could have enabled the court to avoid error. Id. at ¶ 10.

{¶ 33} Here, the State's position was straightforward. It argued that Bryant violated Middletown Ordinance 432.13(a)(2) when he failed to signal within 100 feet of the intersection. The prosecutor read the pertinent language of the ordinance into the record. Bryant's motion did not raise any question about the interpretation of "when required" or

challenge the validity of *Lowman*. The trial court, on its own, adopted an interpretation of the ordinance that this court has rejected.

{¶ 34} The State was not obligated to anticipate that the trial court would reject established precedent. The State's failure to cite *Lowman* in a proceeding where the defendant never questioned its validity does not constitute forfeiture of the argument that *Lowman* governs. A party is not required to cite authority for propositions that are not in dispute. When the trial court unexpectedly adopted an interpretation of the ordinance that contradicts this court's precedent, the appropriate remedy is appellate review, not a finding that the State forfeited its ability to invoke that precedent.

### III. Conclusion

{¶ 35} The State's assignment of error is sustained. The trial court erred in granting Bryant's motion to suppress. The uncontested facts establish that Bryant did not activate his turn signal until after his vehicle had come to a complete stop at the intersection. By waiting until he was already stopped, Bryant failed to signal "during not less than the last 100 feet traveled" before turning. Officer Singleton's observation of this gave him a reasonable, articulable suspicion that Bryant had violated Middletown Ordinance 432.13(a)(2), which justified a traffic stop to make inquiry.

{¶ 36} The judgment of the trial court is reversed, and this case is remanded for further proceedings consistent with this opinion.

BYRNE, P.J., concurs.

PIPER, J., concurs separately.

**PIPER, J., concurring separately.**

{¶ 37} I concur with my colleagues' judgment reversing the trial court and sustaining the State's single assignment of error. I write separately because my reasoning

differs.

{¶ 38} Following a hearing on Bryant's motion to suppress, the trial court found that Bryant had not violated Middletown Ord. 432.13(a)(2) on the evening of November 17, 2022, when, after stopping at a stop sign, Bryant activated his vehicle's left-turn signal and turned left off Fairmont Avenue onto Young Street. Based on this finding, the trial court concluded that Officer Singleton's decision to initiate a traffic stop of Bryant's vehicle was constitutionally infirm, thereby rendering the evidence discovered during the stop subject to the exclusionary rule. I agree with my colleagues that the trial court's application of the law was incorrect.

{¶ 39} Bryant presents several arguments that distract from the ultimate issue in this case. The trial court's decision granting Bryant's motion to suppress answers only a collateral question that need not be decided when ruling on the motion. So too does much of the analysis in the lead opinion. The question this court must answer is not whether Bryant violated Middletown Ord. 432.13(a)(2) on the evening of November 17, 2022. The question is instead whether Officer Singleton had the requisite reasonable, articulable suspicion to believe, even if mistakenly, that Bryant had committed a traffic violation. If he did, the law plainly establishes that Officer Singleton was justified in initiating a traffic stop of Bryant's vehicle that evening, regardless of whether Middletown Ord. 432.13(a)(2) had been violated.

{¶ 40} The facts in this case indicate that Bryant activated his turn signal upon reaching the decision to turn left from Fairmont Avenue onto Young Street. I agree with Bryant's argument that "when required" is undefined. I also agree with Bryant's argument that it is not always possible to activate one's turn signal for "not less than the last 100 feet traveled by the vehicle." Rather, in my opinion, and as my colleagues apparently agree, the "when required" language used in Middletown Ord. 432.13(a)(2) is ambiguous.

Statutory ambiguity is the "touchstone" of the rule of lenity. *Lewis v. U.S.*, 445 U.S. 55, 65 (1980). The rule of lenity, codified in R.C.2901.04(A), applies when the wording of a criminal statute is susceptible to more than one reasonable interpretation. *State v. Gilbert*, 2021-Ohio-2810, ¶ 13 (12th Dist.). When this occurs, the statute is to be construed in favor of the defendant. *Id.* This rule is applicable to both criminal statutes and municipal ordinances alike. *In re Jon J.*, 144 Ohio App.3d 572, 574 (6th Dist., 2001).

{¶ 41} Unlike my colleagues, a discussion of when Bryant was legally required to activate his turn signal is not germane to this appeal. This is because, even if Officer Singleton was mistaken in believing Bryant had violated Middletown Ord. 432.13(a)(2), reasonable mistakes of law can still constitute reasonable, articulable suspicion justifying the initiation of a traffic stop. *See State v. Egnor,* 2020-Ohio-327, ¶ 24 (12th Dist.) (noting that "even if [the officer] was mistaken in his belief that a traffic violation had occurred, a police officer's objectively reasonable belief that a traffic violation has occurred, including reasonable mistakes of law, can constitute reasonable suspicion to justify a traffic stop"); *see, e.g., Wilmington v. Conner,* 144 Ohio App. 3d 735, 740 (12th Dist. 2001) ("the exclusionary rule may be avoided with respect to evidence obtained in an investigatory stop based on conduct that a police officer reasonably, but mistakenly, believes is a violation of law").[1]

{¶ 42} Consequently, on appeal, and when applying the rule of lenity to the case at bar, whether Bryant had ever actually violated Middletown Ord. 432.13(a)(2) is immaterial to the question of whether the evidence discovered during the stop of Bryant's

---

1. This court is not unique in its understanding that the purpose of the exclusionary rule is not served if the officer reasonably believed, although mistaken, that a violation of law occurred when instituting a traffic stop. *See State v. Spellacy*, 2019-Ohio-785, ¶ 31 (8th Dist.) ("the traffic stop at issue is still lawful if [the officer] reasonably, albeit mistakenly, believed that a violation of the statute had occurred"); and *State v. Fickert*, 2018-Ohio-4349, ¶ 20 (2d Dist.), quoting *State v. Kirkpatrick*, 2017-Ohio-762, ¶ 6 (1st Dist.) ("A police officer's objectively reasonable belief that a traffic violation has occurred, including reasonable mistakes of law, can constitute reasonable suspicion to justify a traffic stop.").

vehicle was subject to the exclusionary rule. The only question is whether Officer Singleton had the requisite reasonable, articulable suspicion to believe, even if mistakenly, that Bryant had committed a traffic violation on the evening of November 17, 2022. Upon review, the record clearly demonstrates that he did. Officer Singleton was therefore justified in initiating the traffic stop of Bryant's vehicle that evening. Accordingly, albeit for different reasons, because the record clearly demonstrates that Officer Singleton possessed the requisite reasonable, articulable suspicion necessary to conduct a traffic stop of Bryant's vehicle on the evening of November 17, 2022, I agree with my colleagues in reversing the trial court and sustaining the State's single assignment of error.

## J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed and this cause is remanded in accordance with the above Opinion.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Matthew R. Byrne, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Mike Powell, Judge